## No. 11,047.

### LUGON, et al. *v.* CROSIER, et al.

Decided September 14, 1925.   Rehearing denied November 2, 1925.

Proceeding to establish boundaries. Judgment for plaintiffs.

### *Affirmed.*

1.  BOUNDARIES—*Corners—Location.* Method of establishing section corners on sections adjacent to a correction line, announced.

2.  *Corners—Location.* Rules concerning restoration of lost corners are not applicable to establishing corners which have never been located.

3.  *Corners—Correction Line.* Where a correction line forms the north boundary of a section, the north section corners of the section must be located on that line at the points intersected by the lines on the east and west sides of the section.

4.  COSTS—*Taxation—Review.* Orders taxing costs will not be disturbed on review, when they are not incorporated in the abstract.

5.  COURTS—*Errors—Correction.* Courts may correct their own errors until final judgment and motion for new trial is denied.

*Error to the District Court of Routt County, Hon. Charles
E. Herrick, Judge.*

Mr. JOSEPH K. BOZARD, for plaintiffs in error.

Mr. C. W. DARROW, for defendants in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

THIS was a proceeding under the Code 1921, c. XXIV, for the establishment of disputed boundaries of section 9. township 4 north range 84 west of 6th P. M. in Routt county. The plaintiffs in error were defendants below. There were several reports by Richardson, the first commissioner, and one by Harkness, his successor. The latter was adopted, in toto, by the court and a decree was entered accordingly. The case comes here on error. The dispute is fundamentally on the position of the northwest and northeast corners of the section and incidentally upon the north, east and west quarter corners thereof.

The township closes on the first correction line north, a standard parallel, and is somewhat more than one mile short, so that the north tier of sections and say one hundred and fifty feet of the next tier is missing and the survey of section 9 is otherwise irregular. These conditions do not all affect the questions before us but they explain some things which otherwise would be confusing.

The correction line above mentioned was surveyed in 1873, and, according to the practice in government surveys, is marked by standard corner monuments upon the southeast and southwest corners of the southern tier of sections of township 5 north of said range 84.

Ordinarily, the north tier of sections being omitted, the northeast corner of section 9 would coincide with the southeast corner of 33, and the northwest corner of 9 with the southwest corner of 33, but, since these corners are on a correction line and said corners of 33 were fixed first as standard corners, the east and west boundary lines of 9

were or should have been simply run to that line, the intersections forming the corners of section 9 and tied in the field notes to the standard corners.

1. The Harkness report in question fixes the northeast corner of section 9 by starting from the southeast corner of that section, which is undisputed, and running a line due north to its intersection with the correction line. Whether this method was right is one of the cardinal questions before us. The interior of said township 4 was surveyed for the government in 1881 by one Smith. The commissioner started where Smith, in his notes, said he started, followed the course which he said he took to the line on which he said he stopped and called that the corner. We cannot say that that was wrong. Plaintiffs in error say that there was here a monument which was ignored, but the commissioner expressly finds that Smith never located or found the standard parallel (correction line), but calculated or guessed the ties from the field notes of the survey of 1873, and that this monument "is not the original government closing corner for the northeast corner of section 9." If so, it was properly ignored and there was evidence to support the finding. The commissioner, an engineer and surveyor, who not only heard the witnesses, but went on the ground and re-ran the lines with the field notes of Smith's survey and saw the topography therein mentioned and the alleged monuments themselves, is in a better position than we to determine whether the monument is genuine.

The plaintiffs in error say, however, that if the monument is rejected, the rule of the General Land Office as to restoring lost monuments must be followed. The rule invoked is Gen. L. O. Reg. 47 "A lost or obliterated closing corner from which a standard parallel has been initiated or to which it has been directed will be re-established in its original place by proportionate measurement from the corner used in the original survey to determine its position."

The corner in question is a closing corner but not one from which a standard parallel has been initiated nor one to which a standard parallel has been directed; we do not see, therefore, that the rule relates to this case, but if it did we doubt that the corner can be regarded as lost or obliterated. It never existed and so cannot, strictly speaking, be said to be lost or obliterated. If the monument were lost or obliterated there would be some reason to attempt to re-locate it, and perhaps the method prescribed in rule 47 is as good a way as any other, but when it is a myth, never on the ground, the natural, straightforward and sensible way is to establish the corner at the place where the original surveyor ought to have put it and that is where the north course of the east line of the section meets the correction line at right angles, and that is where the report puts it. Everybody knows that that is where the section line ought to have closed and where the original surveyor, honest or dishonest, meant to close it; that his duty required him to close it there, so that the inclosure of his lines might be a rectangle or nearly so. Why should courts be less reasonable than reasonable men?

2. The next question is the location of the northwest corner of section 9. The commissioner professed himself unable to find whether a certain stone located 655 feet east and 122 feet north of the standard southwest corner of said section 33 was the original government corner set as the closing corner of the west line of section 9, but leaves that to the court upon the evidence. The court, in effect, finds that it is such corner, and, in accordance with the commissioner's recommendation if such should be the finding, places the true northwest corner of 9 at the place where a true line from the southwest corner thereof to the said stone intersects the said correction line. This was right. Being a true monument, it controlled the course, indeed it was very near it, but the correction line was also a monument and in view of the fact that the surveyor Smith had no right to cross it, it must be regarded as controlling the stone monument. Therefore the true corner is on the

correction line, where the surveyor ought to have stopped and where his notes say he stopped.

3. The plaintiffs in error complain of the costs, but the abstract does not show what the orders in that regard were; we cannot therefore, say they were erroneous.

4. The court at one time directed commissioner Richardson to fix the corners by said rule 47, and plaintiffs in error now claim that to be consequently the law of the case. We do not think so. The court may correct its own errors until final judgment and motion for new trial denied.

It is not necessary to notice the remaining objections to the decree.

Judgment affirmed.